UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

DAILY NEWS CHARITIES, INC.,                    :

                Plaintiff,                    :    No: _____
                                        (Electronically Filed)

              - against -                    :

USA BOXING, METROPOLITAN                    :
ASSOCIATION,
                                   Jury Trial Demanded

              Defendant.                    :

                                  :

– – – – – – – – – – – – – – – – – – – – – – – – – – – – x

## COMPLAINT

Plaintiff Daily News Charities, Inc. ("DNC" or "Plaintiff"), by and through its

undersigned counsel, as and for its complaint against Defendant USA Boxing, Metropolitan

Association ("Metro" or "Defendant") alleges as follows:

## NATURE OF ACTION

1.        Since 1927, DNC has produced, sponsored and presented an amateur boxing

tournament under the service mark GOLDEN GLOVES. The GOLDEN GLOVES tournament has

launched the careers of such boxing luminaries as Sugar Ray Robinson, Floyd Patterson and Jose

Torres. In its more than 90 year history, the GOLDEN GLOVES mark has earned phenomenal

goodwill and become the premier amateur boxing tournament in the New York City metropolitan

area.

2.        DNC has continuously presented the GOLDEN GLOVES tournament and its name

has been associated with the tournament from the beginning. In addition to advertisements and

ringside signage, boxers wear uniforms with DAILY NEWS emblazoned on them while competing. By virtue of its longstanding use, DNC has common law rights in the GOLDEN GLOVES mark in the New York City metropolitan area. Indeed GOLDEN GLOVES is synonymous with Plaintiff DNC and its affiliated newspaper *New York Daily News* ("*Daily News*") in the New York City metropolitan area.

3.        Defendant (or its predecessor) formed in 1981 – more than 50 years after DNC began presenting the GOLDEN GLOVES tournament. It is a "local boxing committee" of USA Boxing, Inc., the national governing body of amateur, Olympic-style boxing and, as such, performs certain necessary functions for USA Boxing sanctioned events. It began working with DNC to sanction the tournament under USA Boxing rules, upon information and belief, in the late 1970s or early 1980s, but it has never obtained any ownership rights in the GOLDEN GLOVES mark.

4.        This action concerns Defendant's willful and wanton infringement of Plaintiff's GOLDEN GLOVES service mark.  Metro has begun advertising the "Metro Golden Gloves" and purports to be presenting the 2018 GOLDEN GLOVES tournament in New York without Plaintiff. In addition to soliciting boxers and venues and claiming to run the official New York GOLDEN GLOVES tournament, Metro has, upon information and belief, been advising participant gyms and others that Metro has been "forced" to run the tournament itself. This is blatantly false.

5.        DNC seeks to enjoin Defendant from any further infringing use of the GOLDEN GLOVES mark and from any further false advertising of DNC, its employees, agents and affiliates.

6.        Plaintiff seeks a permanent injunction, as well as an award of damages against defendant's acts of trademark infringement, unfair competition, false advertising and false designation in violation of the Lanham Act, as amended, 15 U.S.C. § 1051 et seq., and the laws of

2841519_1

New York, all relating to the infringement of Plaintiff's GOLDEN GLOVES service mark. As set forth below, Defendant has continued its unauthorized use of the GOLDEN GLOVES mark despite Plaintiff's request that Defendant cease use of the mark.

## THE PARTIES

7.      Plaintiff DNC is a charitable health and welfare organization incorporated under the laws of the State of New York and an affiliate of Daily News, L.P., the publisher of the *Daily News*. DNC raises money for disaster relief as well as for the families of local police officers, EMS workers and firefighters killed in the line of duty.

8.      Defendant Metro is a not-for-profit boxing sanctioning organization incorporated under the laws of the State of New York. Upon information and belief, Metro operates in the New York City metropolitan area and Dutchess, Nassau, Orange, Ulster, Putnam, Rockland, Suffolk, Sullivan and Westchester counties of New York State.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. §§ 1331, 1337 and 1338(a) because this action involves unfair competition claims under the Lanham Act.

10.      This court has supplemental jurisdiction over the claims arising out of Defendant's trademark infringement, unfair competition and false designation in violation of New York law, and other violations of state law under 28 U.S.C. § 1367(a).

11.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)-(c) because Defendant resides in this judicial district and a substantial part of the events giving rise to the claims occurred in this judicial district.

2841519_1

## INTRODUCTION

12.      Since 1927, Plaintiff has held its annual *New York Daily News* Golden Gloves amateur boxing tournament (the "NYDN Golden Gloves tournament"), the oldest and largest amateur boxing tournament in the world.

13.      Lauded as the premier competition for amateur boxers in the country, the NYDN Golden Gloves tournament consists of a series of elimination bouts held over a ten-week period throughout the New York City metropolitan area culminating in the final rounds, sited at such grand venues as Madison Square Garden and the Barclays Center in Brooklyn. Historically, a field of several hundred to over 1,000 fighters is narrowed down to compete at the finals.

14.      Famous past NYDN Golden Gloves contenders have included such boxing legends as Muhammad Ali, Sugar Ray Robinson, Floyd Patterson, Jose Torres, Emile Griffith, Vito Antuofermo, Mark Breland, Riddick Bowe, and Zab Judah.

15.      The tournament has launched many contenders to considerable fame on the national and international boxing scenes. As echoed in the words of five-time NYDN Golden Gloves Champion and Olympic gold medalist Mark Breland, "Everyone knew about the Daily News Golden Gloves, to be in the paper . . . all anyone would talk about was getting to the Gloves. It was the big thing." Farrell, *Cradle of Champions,* Index of Quotations.

16.      The NYDN Golden Gloves tournament aims to provide youth not only with an opportunity for sportsmanship and competition but also self-improvement and skill development.

17.      Conceived by *Daily News* sports editor and amateur boxing enthusiast Paul Gallico in the 1920s, the idea behind the NYDN Golden Gloves tournament was to create an event that would promote the *Daily News* newspaper and celebrate the sport of amateur boxing.

4

2841519_1

18.    Gallico also came up with the name "Golden Gloves," in a fashion following another popular *Daily News* event at the time, the annual "Silver Skates" speed skating derby. The winner receives "golden gloves" with the "Daily News Charities" name as depicted below.



19.    The inaugural NYDN Golden Gloves tournament was held at Madison Square Garden on March 28, 1927.

20.    From that point forward up through and including the present, DNC has continuously used and maintained the GOLDEN GLOVES mark in New York in connection with its production and sponsorship of the NYDN Golden Gloves tournament. By virtue of its use of the GOLDEN GLOVES mark, DNC has become the undisputed owner of the mark in the New York City metropolitan area.

21.    Plaintiff has used the GOLDEN GLOVES mark extensively through all phases of

5

producing and presenting the tournament, including soliciting venues and boxers, advertising and

selling tickets and on signage at the tournament. *Daily News*' connection with the tournament was

clear from the outset, as shown in the announcement of the second annual tournament shown below:



22.     The use of the GOLDEN GLOVES mark is ubiquitous to boxers and the general

public and is included on a myriad of items such as sign-up sheets, boxer entry paperwork, parental

consent and release forms for boxers, media passes, banners and posters. Examples of materials from

the 2017 NYDN Golden Gloves tournament are annexed hereto as Exhibit A.

23.     The GOLDEN GLOVES mark together with the DAILY NEWS logo has been

6

featured on the jerseys of tournament competitors, as well on the floor design of the boxing ring, as

pictured below, thus reinforcing the association between Plaintiff and the GOLDEN GLOVES mark.





24.      Plaintiff's social media accounts are replete with mentions of the tournament

referencing "Daily News Golden Gloves," including its dedicated facebook page for the event,

https://www.facebook.com/NYDNGG/?fref=ts. In addition, Plaintiff maintains Twitter and

Instagram accounts for the NYDN tournament at the handle @dngoldengloves.

25.      Throughout its over 90-year history, the NYDN Golden Gloves tournament has

received widespread editorial and media coverage. The GOLDEN GLOVES and the triumphs of its boxers have been the subject of extensive editorial coverage by the affiliated *Daily News* , as well as such other national and international publications as *the New York Times*, *Newsday, Washington Post, Boston Globe, Allentown Morning Call, St. Petersburg Times, Fort Worth Star-Telegram, San Jose Mercury News,* among others. Samples of editorial coverage through the years are annexed hereto as Exhibit B.

26.     Such works as *Cradle of Champions: 80 Years of New York Daily News Golden Gloves*, produced by Sports Publishing LLC in 2007, and *Cradle of Champions*, a documentary film produced and directed by Bartle Bull, have documented the tournament's success and notoriety and its renown as a launching pad for new boxers looking for a big break. In addition, as chronicled in the book *Cradle of Champions*, the tournament is believed to have inspired the subject matter of such films as *Golden Gloves* (1940) and *The Golden Gloves Story* (1950).

27.     The NYDN Golden Gloves tournament has also been televised regularly throughout its history, most recently on MSG network and through DiBella Entertainment's *Broadway Boxing* series on SNY. The average viewership for the broadcasts is approximately 345,000 viewers, with a high all-time viewership of nearly 700,000 viewers.

28.     The fame of the NYDN Golden Gloves tournament is also readily illustrated by the metric of Google search results. A search for the term "Daily News Golden Gloves" (in quotes) yields 140,000 results, a significant portion of the total universe of 470,000 results for the term "Golden Gloves" (in quotes).

29.     Despite the subsequent adoption and use of the GOLDEN GLOVES mark by Golden Gloves of America, Inc. ("GGA"), which hosts a national Golden Gloves tournament for

winners of regional affiliated Golden Gloves tournaments outside of New York, it is undisputed that DNC's use of the GOLDEN GLOVES mark *in New York* pre-dates that of GGA by over thirty years, and until recently GGA has not contested DNC's rights to the GOLDEN GLOVES mark in the New York City metropolitan area.

30.     Though unaffiliated, winners from the NYDN Golden Gloves tournament have been sent to the national tournament hosted by GGA.

31.     Throughout its celebrated history, the NYDN Golden Gloves tournament has sold tickets to and drawn fans from across the country and the world.

32.     It continues to draw yearly audiences in excess of ten thousand people, averaging 18,000 tickets sold in the preliminary bouts and 7,000 in the finals since its inception, for a total audience of over 1.6 million.

33.     Over the nearly century-long history of the NYDN Golden Gloves tournament, Plaintiff has controlled and maintained the GOLDEN GLOVES mark in New York through and including such activities as obtaining sponsors, selecting and securing venues for the tournament, publicizing and collecting contestant registrations, arranging for physicals for tournament registrants, securing editorial coverage and promotion in its affiliated *Daily News*, providing prizes, funding the event, paying the sanctioning fees, and exercising quality control to protect the GOLDEN GLOVES brand.

34.     The NYDN Gloves Gloves tournament has achieved widespread recognition across New York and the country as a legendary amateur boxing event.

35.     Due to Plaintiff's above efforts, the GOLDEN GLOVES mark has grown and continues to signify services originating from Plaintiff and its affiliates in the New York City

9

metropolitan area.

36.      As a result of its longstanding and continuous use of the GOLDEN GLOVES

mark, DNC has built up goodwill of great value in the mark.

37.      From approximately 1968 to 1998, the Plaintiff held federal registrations for the

GOLDEN GLOVES mark on the Principal Register in the United States Patent and Trademark

Office ("PTO"). Copies of the NDC's 1968 and 1991 certificates of registration for the GOLDEN

GLOVES mark are annexed hereto as Exhibit C.

38.      Subsequently, in 1998, registration of DNC's GOLDEN GLOVES mark was

inadvertently allowed to lapse.

39.      In 2017, the NYDN Golden Gloves tournament celebrated its 90th anniversary

with finals at The Manhattan Center and Aviator Sports Center.

40.      DNC is currently in the process of planning the 91st annual NYDN Golden Gloves

tournament for 2018 and intends to promote, produce, and advertise for the tournament as it has

done in the past, including through use of its GOLDEN GLOVES mark.

### DEFENDANT'S INFRINGING USE OF THE GOLDEN GLOVES MARK

41.      As part of its production of the NYDN Golden Gloves tournament, Plaintiff has

over the years worked and contracted with Defendant, which has served as a sanctioning body and

provided related services and been granted certain rights by DNC in connection therewith.

42.      In its role as a sanctioning body, Defendant has performed such services among

others in connection with the NYDN Golden Gloves tournament as sanctioning elimination bouts,

providing scales for weighing boxers, selecting bout officials, and approving boxer equipment.

43.      The predecessor entity to Defendant, The Metropolitan Amateur Boxing

2841519_1

Federation, Inc. ("MABF"), was incorporated in New York on April 9, 1981, fifty-four years after Plaintiff and its affiliates staged the first NYDN Golden Gloves tournament in New York. Upon information and belief, Metro did not begin to act as sanctioning body for the NYDN Golden Gloves until at least the late 1970s or early 1980s.

44.     On Monday, July 17, 2017, DNC received a "take it or leave it" letter from an attorney for Defendant, aggressively asserting ownership and control over the NYDN Golden Gloves and making many demands in order for DNC to be a "title sponsor." In subsequent communications, Defendant informed DNC that (a) Metro intends to run its own "Golden Gloves" tournament during 2018 using the GOLDEN GLOVES mark without the permission of Plaintiff; and (b) DNC would have no involvement in the planning or execution.

45.     Plaintiff, however, repeatedly indicated its desire to work cooperatively with Defendant consistent with past practice to put on the NYDN Golden Gloves tournament, as well as a willingness to discuss and consider implementing certain changes requested by the Defendant, as long as they would not harm the event.

46.     Nonetheless, Defendant has failed and refused to meet with DNC to discuss the upcoming tournament, despite the fact that DNC typically begins promoting and conducting the registration process for entrants in mid-November for the upcoming tournament.

47.     Throughout its history of working with DNC, Metro was aware of DNC's longstanding use of the GOLDEN GLOVES mark in connection with the NYDN Golden Gloves tournament. Metro never challenged DNC's use of the mark in connection with the tournament, nor its rights in the mark.

48.     Indeed, a 1992 agreement regarding the administration of NYDN Golden Gloves

tournament specifically makes reference to DAILY NEWS GOLDEN GLOVES as a "registered mark," which it was at the time, and numerous agreements entered into by the parties since 2000 refer to the "the annual tournament known as the New York Daily News Golden Gloves Boxing Tournament." Nothing in any of these agreements purports to transfer any rights in the mark to Metro, and Metro did not then, and has not – until the planning for the 2018 tournament – raised any challenge to Plaintiff's rights in the mark.

49.     Furthermore, Metro recognizes that the *Daily News* is the source of continuity and the repository of the history of the GOLDEN GLOVES tournament in New York. Its website states: "For historical information about the Golden Gloves, please contact the Daily News at 212-210-2100. Ask for the Golden Gloves." Metro's website further notes "Golden Gloves entry coupons appear in the New York Daily News beginning in November of each year. Physicals are held the first few weeks of January of the following year on dates specified by the Daily News. YOU MUST GO TO A DAILY NEWS PHYSICAL IN ORDER TO COMPETE IN THE GOLDEN GLOVES. Competition begins in January and continues until April." Copies of answers to FAQs on Metro's website are annexed as Exhibit D.

50.     Compounding its infringing use of Plaintiff's GOLDEN GLOVES mark, Metro also has also communicated to Plaintiff that it intends to deny any application by Plaintiff for sanctioning of any event Plaintiff intends to produce in New York.

51.     Despite its lack of permission from Plaintiff to use the GOLDEN GLOVES mark, Metro has persisted in its unauthorized use of the mark in New York, including by promoting a 2018 "New York Metro Golden Gloves Tournament." ("2018 Metro Golden Gloves Tournament"). Examples of such use include listings on the website of USA Boxing, *see*

2841519_1

https://webpoint.usaboxing.org/wp15/Events2/Events.wp?evt_CategoryID=2 and

https://webpoint.usaboxing.org/wp15/Events2/ViewEvt.wp?EventID=18218., as well as an event

notification that indicates "big changes happening for Metro," in connection with the  "status and the

future of the New York Metro Golden Gloves." *See* Event Notification, annexed hereto as Exhibit

E.

52.     Metro has persisted in promoting its tournament with the GOLDEN GLOVES

mark without Plaintiff's permission, including by advertising and securing venues, in violation of

Plaintiff's rights as the owner of the GOLDEN GLOVES mark in the New York City metropolitan

area.

53.     In addition, Metro has falsely asserted to others that DNC stepped back from its

direction of the event due to recent changes, forcing Metro to run the tournament itself.

54.     Despite Plaintiff's good faith efforts to resolve the dispute amicably with

Defendant, Defendant has persisted in its unauthorized use of the GOLDEN GLOVES mark in its

promotion, advertising, and other conduct relating to the purported "2018 Metro Golden Gloves

Tournament."

### FIRST CAUSE OF ACTION
(Unfair Competition and False Designation of Origin
Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

55.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1

through 54, inclusive, of this Complaint as if fully set forth herein.

56.     Plaintiff is the owner of the GOLDEN GLOVES mark in the New York City

metropolitan area, which is valid and protectable under common law.

57.     Plaintiff has used the GOLDEN GLOVES mark continuously for over 90 years in

13

interstate commerce in connection with producing and sponsoring the NYDN Golden Gloves tournament.

58.     By its acts alleged herein, Metro has infringed, and continues to infringe, the GOLDEN GLOVES mark, in violation of 15 U.S.C. § 1125(a).

59.     Metro's use of "Golden Gloves" in the New York City metropolitan area is without permission of the owner of the GOLDEN GLOVES mark.

60.     Metro's use of "Golden Gloves" has and is likely to cause confusion and mistake and is likely to deceive the public.

61.     Metro's use of "Golden Gloves" in connection with its advertising, promotional, and other efforts surrounding the 2018 Metro Golden Gloves Tournament has confused and will continue to confuse the public as to the source of the tournament. This confusion is likely to lead the public to believe that the tournament originates from, is affiliated with, is sponsored by, or endorsed by Plaintiff.

62.     Metro has been and/or is using "Golden Gloves" with full knowledge of and/or willful disregard for Plaintiff's rights as the owner of the GOLDEN GLOVES mark in the New York City metropolitan area.

63.     Upon information and belief, Metro's acts were undertaken in bad faith and with knowledge of Plaintiff's rights as the owner of the GOLDEN GLOVES mark in the New York City metropolitan area.

64.     By reason of the foregoing, Defendant has falsely designated the origin of its "Golden Gloves" tournament and/or infringed Plaintiff's trademark rights by use of the "Golden Gloves" designation in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Upon

14

information and belief, such infringement is intentional.

65.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's use of the "Golden Gloves" designation in connection with an amateur boxing event in the New York City metropolitan area.

66.     Plaintiff has been injured by Defendant's actions and is entitled to damages in an amount to be determined at trial. Plaintiff is also entitled to (i) treble damages sustained by them, (ii) costs and (iii) reasonable attorney's fees.

### SECOND CAUSE OF ACTION
(Unfair Competition and False Designation of Origin
Under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a))

67.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1 through 66, inclusive, of this Complaint as if fully set forth herein.

68.     Defendant has used misleading description of fact, or false or misleading representations of fact in commercial advertising and promotion which misrepresent the nature, characteristics, and qualities of its services.

69.     Defendant's misleading statements include that DNC removed itself from running the GOLDEN GLOVES tournament and that Metro has been "forced" to take over the tournament.

70.     These misleading statements are likely to cause and have caused damage to DNC.

71.     Defendant's misleading statements constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

72.     DNC lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's continued false advertising.

2841519_1

**THIRD CAUSE OF ACTION**
(Common Law Trademark Infringement)

73.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1 through 72, inclusive, of this Complaint as if fully set forth herein.

74.     The conduct of Defendant as described herein constitutes common law trademark infringement under the common law of the State of New York.

75.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's use of the "Golden Gloves" mark and name or any mark confusingly similar to GOLDEN GLOVES in connection with an amateur boxing event in the New York City metropolitan area.

76.     Plaintiff has been injured by Defendant's actions and is entitled to damages in an amount to be determined at trial. Plaintiff is also entitled to (i) treble Defendant's profits from "Golden Gloves" (ii) treble damages sustained by them, (iii) costs, and (iv) reasonable attorney's fees.

**FOURTH CAUSE OF ACTION**
(Violation of NY General Business Law § 349 for Deceptive Acts and Practices)

77.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1 through 76, inclusive, set forth above, as if the same were set forth fully herein.

78.     Through the deceptive acts described herein, Defendant has engaged in consumer oriented conduct that has affected the public interest of New York and has resulted in injury to consumers and harm to the public in the State of New York, in particular, misleading tournament participants, boxing event ticket purchasers and other consumers based on its use of the GOLDEN GLOVES mark without Plaintiff's permission in promoting a "Golden Gloves" tournament neither

affiliated with nor endorsed by Plaintiff.

79.     Defendant's acts and practices have deceived or have a tendency to deceive a material segment of the public to which Defendant has directed its marketing activities, and Plaintiff has been injured thereby.

80.     Upon information and belief, Defendant has willfully engaged in deceptive acts or practices in the conduct of its business, in bad faith, in violation of § 349 of the General Business Law of the State of New York.

81.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's use of the "Golden Gloves" mark and name or any mark confusingly similar to GOLDEN GLOVES in connection with an amateur boxing event in the New York City metropolitan area.

82.     Plaintiff has been injured by Defendant's actions and is entitled to damages in an amount to be determined at trial. Plaintiff is also entitled to (i) treble Defendant's profits from "Golden Gloves" (ii) treble damages sustained by them, (iii) costs, and (iv) reasonable attorney's fees.

**FIFTH CAUSE OF ACTION**
(Injury to Business Reputation and Dilution Under
New York General Business Law Section 360-1)

83.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1 through 82, inclusive, set forth above, as if the same were set forth fully herein.

84.     Plaintiff has strong trademark rights in the GOLDEN GLOVES mark, used in in connection with its advertising, promotional, and other efforts surrounding the NYDN Golden Gloves Tournament

17

2841519_1

85.     Metro's activities as alleged above have created and continue to create a likelihood of injury to Plaintiff's image and reputation as a sponsor and/or producer of the NYDN Golden Gloves tournament, and to dilute the distinctive quality of the GOLDEN GLOVES mark and all rights held thereunder, in violation of Section 360-1 of the General Business Law of the State of New York.

86.     Upon information and belief, Defendant has willfully engaged in deceptive acts or practices in the conduct of its business in violation of Section 360-1 of the General Business Law of the State of New York.

87.     Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's use of the "Golden Gloves" mark and name or any mark confusingly similar to GOLDEN GLOVES in connection with an amateur boxing event in the New York City metropolitan area.

88.     Plaintiff has been injured by Defendant's actions and is entitled to damages in an amount to be determined at trial. Plaintiff is also entitled to (i) treble Defendant's profits from "Golden Gloves" (ii) treble damages sustained by them, (iii) costs, and (iv) reasonable attorney's fees.

## SIXTH CAUSE OF ACTION
(Unfair Competition under New York Common Law)

89.     Plaintiff repeats and realleges each and every allegation pleaded in paragraphs 1 through 88, inclusive, set forth above, as if the same were set forth fully herein.

90.     Defendant's acts constitute unfair competition, passing off, and false designation of origin under the common law of the State of New York.

18

2841519_1

91.      Plaintiff lacks an adequate remedy at law and will suffer immediate and irreparable harm unless a permanent injunction is issued enjoining Defendant's use of the "Golden Gloves" mark and name or any mark confusingly similar to GOLDEN GLOVES in connection with an amateur boxing event in the New York City metropolitan area.

92.      Plaintiff has been injured by Defendant's actions and is entitled to damages in an amount to be determined at trial. Plaintiff is also entitled to (i) treble Defendant's profits from "Golden Gloves" (ii) treble damages sustained by them, (iii) costs, and (iv) reasonable attorney's fees.

WHEREFORE, Plaintiff demands that judgment be entered in their favor and against Defendant:

a.      Preliminarily and permanently enjoining Defendant, together with its officers, agents, servants, and employees and those persons acting in concert with them from directly or indirectly: using the GOLDEN GLOVES mark or any confusingly similar mark and passing off or otherwise representing to the public that any amateur boxing event in the New York City metropolitan area produced by Defendant without involvement of Plaintiff is in any way sponsored by, created by, endorsed by, emanate from or are affiliated with Plaintiff or GOLDEN GLOVES; and

b.      Preliminarily and permanently enjoining Defendant, together with its officers, agents, servants, and employees and those persons acting in concert with them from directly or indirectly: falsely advertising that DNC has removed itself from the NYDN Golden Gloves tournament or their management or responsibility therefor, such that Metro has in any way taken over or been "forced" to take over management and production

19

2841519_1

of the GOLDEN GLOVES tournament; and

c.      Awarding Plaintiff its attorney's fees, cost and disbursements in this action

d.      Awarding such other and further relief as the Court deems just and proper.

Dated: November 9, 2017
       New York, New York

                        SATTERLEE STEPHENS LLP


                        By: _____
                                Mark Lerner (ML-4858)
                        230 Park Avenue
                        New York, New York 10169
                        (212) 818-9200
                        mlerner@ssbb.com
                        *Attorneys for Plaintiff Daily News Charities, Inc.*

20