UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─  X

DAILY NEWS CHARITIES, INC.,                                      :
                                                                :     Civil Action No.: 17-cv-08733 (VEC)
                                            Plaintiff,           :
                                                                :
                        - against -                             :
                                                                :
USA BOXING, METROPOLITAN                                         :
ASSOCIATION,                                                     :
                                                                :
                                            Defendant.          :

─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─ ─  X


## [PROPOSED] ORDER DISMISSING PLAINTIFF'S CLAIMS WITH PREJUDICE


WHEREAS, Plaintiff Daily News Charities, Inc. ("DNC") filed a complaint on November 9, 2017 against Defendant USA Boxing, Metropolitan Association ("Metro") (collectively, the "Parties") alleging federal trademark infringement, trademark dilution, use of a false designation of origin, unfair competition, deceptive acts and practices and injury to business reputation under the Lanham Act and New York law, based on Metro's activities relating to promoting and sponsoring a boxing tournament under marks incorporating the GOLDEN GLOVES mark; and

WHEREAS, the Parties have entered an agreement to resolve any disputes arising in connection with Plaintiff's Complaint dated June 12, 2018 (the "Settlement Agreement") annexed hereto as Exhibit A and incorporated by reference herein,

WHEREAS, none of the Parties to the above-captioned action is an infant or incompetent person; and

WHEREAS, the Parties in the above-captioned action wish to discontinue the litigation;

IT IS HEREBY ORDERED as follows:

1.      The above-captioned action is dismissed and discontinued with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

2.      The Settlement Agreement and any order entered thereon shall have no precedential value or effect whatsoever and shall not be admissible in any other

action or proceeding as evidence or for any other purpose except in an action or proceeding to enforce the Settlement Agreement.

3.      In the event there are any disputes regarding the interpretation of, or any legal action necessary to enforce the Settlement Agreement, the Parties hereby submit to the jurisdiction of the United States District Court for the Southern District of New York for such purposes.

4.      Without affecting the finality of this order (the "Order"), the Court hereby retains jurisdiction over the Parties for the purpose of administering the Order; any proceedings contemplated by Section 14 of the Settlement Agreement; or any construction, enforcement or administration of the Settlement Agreement related thereto.

SO ORDERED:

                                        _____
                                                United States District Judge


Dated: June __, 20__
       New York, New York

# EXHIBIT A

EXECUTION COPY

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (this "Agreement") is entered into as of the date last signed below (the "Effective Date") by and between (a) Daily News Charities, Inc. ("DNC"), a New York 501(c)(3) corporation, and (b) USA Boxing, Metropolitan Association ("Metro"), a New York 501(c)(3) corporation. DNC and Metro shall be referred to collectively as the "Parties", and each, individually, as a "Party".

### BACKGROUND

WHEREAS, DNC purports to be the owner of the GOLDEN GLOVES mark in the New York City Metropolitan area andpurports to have produced and sponsored amateur boxing tournaments, and conducted related activities, under such mark for 90 years; and

WHEREAS, on November 9, 2017, DNC filed a complaint against Metro in the United States District Court for the Southern District of New York Civil Action No. 1:17-cv-08733 (the "Litigation"), alleging trademark infringement, trademark dilution, use of a false designation of origin, unfair competition, deceptive acts and practices and injury to business reputation under the Lanham Act and New York law, based on Metro's activities relating to promoting and sponsoring a boxing tournament under marks incorporating the GOLDEN GLOVES mark; and

WHEREAS, following negotiations in which each of DNC and Metro has been represented by its own counsel, the Parties have agreed to settle, compromise, and resolve the Litigation on the terms and conditions set forth below.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, DNC and Metro hereby agree as follows:

1.      Cessation of Use of the Mark.

(a)      Metro, and each of Metro's officers, directors, agents, and employees ("Metro Parties"), shall themselves and cause all other persons or entities under their control to, on or before the Effective Date, permanently cease from:

(i)      using, authorizing or facilitating any other party's use of the GOLDEN GLOVES name or mark, or any word, term, name, symbol, logo, design or device (or any combination thereof) that is identical or confusingly similar to, incorporates, or is a colorable imitation or dilutive of the GOLDEN GLOVES mark in connection with any boxing event, or any boxing-related activity (including, but not limited to, a Hall of Fame, fundraising, merchandising, etc.) in the New York City metropolitan area, or representing that it has the right to do so, including but not limited to in any way suggesting a relationship with, sponsorship or endorsement by DNC;

(ii)      sanctioning, sponsoring, producing, advertising, promoting, licensing, approving or otherwise facilitating a boxing tournament under the name GOLDEN GLOVES, or any mark that is identical or confusingly similar to, incorporates, or is a colorable imitation or dilutive of the GOLDEN GLOVES mark;

(iii)     passing off or otherwise representing to the public that any amateur–boxing event sanctioned by, produced by, sponsored by, advertised by, promoted by, licensed by, facilitated by or organized by or under the auspices of, or otherwise associated with, any Metro Parties is in any way sponsored by, created by, endorsed by, emanates from, or is affiliated with DNC;

(iv)     using any false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Metro Parties with DNC, or as to the source or origin of, or sponsorship or approval by, DNC of any Metro Parties' boxing tournaments and activities related thereto or commercial activities;

(v)     awarding any prize in connection with an amateur boxing tournament in the New York City Metropolitan area consisting of a medallion with one or two gold-colored boxing gloves affixed.

(b)     Notwithstanding the foregoing, or anything else to the contrary contained herein, the Parties acknowledge and agree that, should Metro hold a tournament serving as a qualifying tournament for the Golden Gloves of America, Inc., ("GGOA") national Tournament of Champions, Metro may use the terms: "National Golden Gloves", "Golden Gloves Tournament of Champions" or similar designation to identify and factually describe its tournament as a qualifier therefor, provided that the use of those terms is not as a name or brand for any such Metro tournament, is not more prominent than, and is always subordinate to, the name of the tournament, and provided further without limiting the generality of Section 1(a), the tournament is not produced, sponsored, promoted, advertised, or in any way named, branded or referred to in shorthand by Metro as "The Gloves."

(i)     For purposes of clarity and understanding, Metro shall not be prevented from naming and/or branding one or more of their boxing tournament(s) as some form of "___ Gloves" (e.g. Kid Gloves, Silver Gloves, Platinum Gloves, Spanish Gloves, etc.), provided it is in compliance with the prohibitions in Section 1 of this agreement.

(c)     Metro Parties shall not apply for, prosecute or maintain a New York State or Federal trademark application for the GOLDEN GLOVES mark or any mark that is identical or confusingly similar to, or a colorable imitation or dilutive of the GOLDEN GLOVES mark for any boxing event, or any boxing-related activity (including, but not limited to, a Hall of Fame, fundraising, merchandising, etc.) ("Related Activities").

(d)     For avoidance of doubt, unless expressly and specifically delineated herein, Metro shall not be prohibited from undertaking any acts, including, without limitation, those acts that were prohibited by the Temporary Restraining Order and/or Preliminary Injunction issued in this matter

2.     Termination of Prohibitions. The prohibitions set forth in Paragraph 1 shall terminate upon the first to occur of the following:

(a)        The mutual agreement of the parties herein;

(b)        A court of competent jurisdiction determines that DNC is either (i) not the owner of the rights, title, and interest, under common law, in and to the GOLDEN GLOVES mark in connection with boxing tournaments in the New York City Metropolitan area, or (ii) DNC's rights are inferior to Metro's licensor; or

(c)        Pursuant to the dispute mechanism set forth in Section 14 herein, DNC is determined to have abandoned its purported mark pursuant to the definition of "abandoned" in 15 USC §1127.

3.    Removal of Materials from the Marketplace. Metro shall take all commercially reasonable steps to remove from public view and access all materials, including all signs, displays, labels, promotional and packaging materials, and any other materials that use, feature, or bear the GOLDEN GLOVES mark, or any word, term, name, symbol, logo, design or device (or any combination thereof) that is identical or confusingly similar to, incorporates, or is a colorable imitation or dilutive of the GOLDEN GLOVES mark.The foregoing does not require Metro to cease utilizing historical data, videos, photographs and other media from past Golden Gloves tournaments for historical and archival purposes, subject to compliance with the prohibitions in Section 1 of this agreement. The preceding sentence shall not be construed as granting a license or other rights.

4.    Acknowledgement of Ownership and No Challenge. Metro acknowledges that it does not own any rights, title or interest, under common law or otherwise, in or to the GOLDEN GLOVES mark, in connection with boxing tournaments or Related Activities in the New York City Metropolitan area. The Metro Parties shall neither challenge themselves, nor facilitate in any way, the challenge by third parties of DNC's use or exercise of rights in the GOLDEN GLOVES mark in connection with boxing tournaments and Related Activities in the New York City Metropolitan area. The foregoing sentence shall not be construed to require any Metro Party to violaty any valid legal order to produce documents or testify in any challenge to DNC's rights brought by third party. Notwithstanding the forgoing, this Agreement does not create or expand an obligation on Metro  to sanction any DNC event and/or any event(s) produced or promoted by third party(ies).

5.    Mutual Release. The Parties, on behalf of themselves, their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns, and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, independent contractors, managers, representatives, assigns, and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, hereby release and discharge the other Party, together with their predecessors, successors, direct and indirect parent companies, direct and indirect subsidiary companies, companies under common control with any of the foregoing, affiliates and assigns and its and their past, present, and future officers, directors, shareholders, interest holders, members, partners, attorneys, agents, employees, independent contractors, managers, representatives, assigns and successors in interest, and all persons acting by, through, under, or in concert with them, and each of them, from all known and unknown charges, complaints, claims, grievances, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, penalties, fees, wages,

expenses (including attorneys' fees and costs actually incurred), and punitive damages, of any nature whatsoever, known or unknown, which either Party has, or may have had, against the other Party, whether or not apparent or yet to be discovered, or which may hereafter develop, for any acts or omissions related to or arising from:

       (a)      the Litigation;

       (b)      Licensing or use of the GOLDEN GLOVES mark

       (c)      an agreement between the Parties; and/or

       (d)      any claims under federal, state, or local law, rule or regulation relating thereto.

This Agreement resolves any claim for relief that could have been alleged, no matter how characterized, including, without limitation, compensatory damages, damages for breach of contract, bad faith damages, reliance damages, liquidated damages, damages for humiliation and embarrassment, punitive damages, costs and attorneys' fees related to or arising from the Dispute. Should a Party breach Section 5 and/or Section 6 herein, said Party shall indemnify and hold the other Party harmless. This release shall not apply to any breach of this agreement.

6.    Covenant Not to Sue. Each Party hereby irrevocably covenants that neither such Party nor any of its related parties granting the release in Section 5 will, directly or indirectly, alone or by, with, or through others, cause, induce or authorize, or voluntarily assist, participate, or cooperate in, the commencement, maintenance or prosecution of any action or proceeding of any kind or nature whatsoever including, but not limited to, any suit, complaint, grievance, demand, claim, cause of action in, of, or before any government authority against the other Party or any of the other persons or entities released pursuant to Section 5 hereof, seeking or having the tendency to establish any liability on the part of, or to exact any sanction or penalty, or any injunctive, equitable, legal, declaratory, administrative or other relief from or against the other Party, or any of such other released persons or entities, arising from, by reason of, or in connection with any claim or other matter released pursuant to Section 5.

7.    No Outstanding or Known Future Claims/Causes of Action. Each Party affirms that it has not filed with any governmental agency or court any type of action or report against the other Party other than the Litigation, and currently knows of no existing act or omission by the other Party that may constitute a claim or liability excluded from the release in Section 5 above.

8.    Acknowledgment of Settlement. The Parties, as broadly described in Section 5 above, acknowledge that (a) the consideration set forth in this Agreement is in full settlement of all claims or losses of whatsoever kind or character that they have, or may ever have had, against the other Party, as broadly described in Section 5 above, including by reason of the Dispute and (b) by signing this Agreement, and accepting the consideration provided herein and the benefits of it, they are giving up forever any right to seek further monetary or other relief from the other Party, as broadly described in Section 5 above, for any acts or omissions up to and including the Effective Date including, without limitation, the Dispute.

9.      Dismissal of Litigation. DNC and its counsel shall take whatever actions are necessary to ensure that the Litigation is dismissed in its entirety as to Metro with prejudice and with each party to bear its own costs and fees by submitting a Stipulation of Dismissal in the form annexed hereto in Exhibit 1, within five (5) Business Days of the Effective Date. Metro shall cooperate with DNC in securing the dismissal of the Litigation as appropriate.

10.     Agreement is Legally Binding. The Parties intend this Agreement to be legally binding upon and shall inure to the benefit of each of them and their respective successors, assigns, executors, administrators, heirs, and estates. Moreover, the persons and entities referred to in Section 5 above (other than the Parties) are third-party beneficiaries of this Agreement.

11.     Entire Agreement. The recitals set forth at the beginning of this Agreement are incorporated by reference and made a part of this Agreement. This Agreement constitutes the entire agreement and understanding of the Parties and supersedes all prior negotiations and/or agreements, proposed or otherwise, written or oral, concerning the subject matter hereof. Furthermore, no modification of this Agreement shall be binding unless in writing and signed by each of the Parties.

12.     New or Different Facts: No Effect. Except as provided herein, this Agreement shall be, and remain, in effect despite any alleged breach of this Agreement or the discovery or existence of any new or additional fact, or any fact different from that which either Party now knows or believes to be true. Notwithstanding the foregoing, nothing in this Agreement shall be construed as, or constitute, a release of any Party's rights to enforce the terms of this Agreement.

13.     Interpretation. Should any provision of this Agreement be declared or be determined by any court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement. The headings within this Agreement are purely for convenience and are not to be used as an aid in interpretation. Moreover, this Agreement shall not be construed against either Party as the author or drafter of the Agreement.

14.     Governing Law and Submission to Jurisdiction.

        (a)     This Agreement and all related documents, and all matters arising out of or relating to this Agreement, are governed by, and construed in accordance with, the laws of the State of New York, United States of America.

        (b)     Except as set forth below in this Section, any action, suit or other proceeding arising out of or related to this Agreement shall be instituted exclusively in the federal courts of the United States or the courts of the State of New York in each case located in the city of New York and County of New York, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding. Service of process, summons, notice or other document by mail to such party's address set forth herein shall be effective service of process for any action, suit or other proceeding brought in any such court.

        (c)     In the event that DNC maintains that any Metro Party has violated the prohibitions in Paragraph 1 of this Agreement, it shall provide notice of the alleged violation to Metro. Within ten

(10) business days of receiving such notice, Metro shall advise DNC whether it contests the violation or if it has  cured the same. If no such notice is given by Metro, or if, notwithstanding the delivery of timely cure notice, the violation remains uncured or there have been 3 or more non-de minimis violations, Metro shall be deemed to have consented to equitable relief, including a temporary restraining order, an injunction, specific performance, and any other relief that may be available from the Court (without any requirement to post bond). If Metro timely contests the violation, the parties will arbitrate the dispute pursuant to the Streamlined Rules or for Arbitration of JAMS upon service of a Demand for Arbitration by DNC.

(d)     In the event that Metro maintains that DNC has abandoned its mark, it shall, provide notice to DNC that it believes the mark has been abandoned, such notice not to be sent any sooner than January 1, 2022. Within ten (10) business days of receiving such notice, DNC shall advise Metro whether it contests the abandonment. If no such notice is given by DNC, the mark shall be deemed abandoned. If DNC advises Metro that it contests the abandonment, the parties will arbitrate the dispute pursuant to the Streamlined Rules or for Arbitration of JAMS upon service of a Demand for Arbitration by Metro.

(e)     The Parties agree that the District Court shall retain jurisdiction and the Parties shall submit any dispute to the court in the event that a Party does not timely contest the notice of abandonment or violation provided by the other party in Section 14(c) or 14(d), or in the event that:

(i)     no Commencement Letter has been received from JAMS pursuant to Rule 5 of the Streamlined Rules or for Arbitration within two (2) weeks of the service of a Demand for Arbitration, or

(ii)     no arbitrator has been selected by the parties or appointed by JAMS within three (3) weeks of receipt of the Commencement Letter, or

(iii)     at any time, the Party who received the Demand for Arbitration fails timely to pay any fees due to JAMS.

(f)     Once a particular dispute has been submitted to court pursuant to 14(e), it shall be deemed withdrawn from arbitration and not re-submitted.

(g)     The Parties agree that should a particular dispute be submitted to court, such dispute shall be resolved soley by a Magistrate Judge and that the resolution of the same shall be expedited to the greatest extent possible (e.g., utilizing summary hearings and summary proceedings).

15.     Reliance on Own Counsel. In entering into this Agreement, the Parties acknowledge that they have relied upon the legal advice of their respective attorneys, who are the attorneys of their own choosing, that such terms are fully understood and voluntarily accepted by them, and that, other than the consideration set forth herein, no promises or representations of any kind have been made to them by the other Party. The Parties represent and acknowledge that in executing this Agreement they did not rely, and have not relied, upon any representation or statement, whether oral or written,

made by the other Party or by that other Party's agents, representatives or attorneys with regard to the subject matter, basis or effect of this Agreement or otherwise.

16.     Counterparts. This Agreement may be executed by the Parties in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17.     Authority to Execute Agreement. By signing below, each Party warrants and represents that the person signing this Agreement on its behalf has authority to bind that Party and that the Party's execution of this Agreement is not in violation of any By-law, Covenant and/or other restrictions placed upon them by their respective entities.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date first above written.

DAILY NEWS CHARITIES, INC.

By: _____
Name: Julie Xandir
Title: Secretary
Date: 6-12-18

USA    BOXING,    METROPOLITAN ASSOCIATION

By: _____
Name: Johnnie Woluewich, Esq.
Title: Senior Counsel
Date: June 12, 2018